**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
WATERMELON EXPRESS, INC.,

                      Plaintiff,

              - against -

MARINE PARK FARMER'S
MARKET, INC., et al.,

                      Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 05-4649 (FB) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

       Plaintiff Watermelon Express, Inc. ("Watermelon") commenced this action on September 30, 2005, against defendants Marine Park Farmers Market ("Marine Park") and Rocco Rafaniello ("Rafaniello"), seeking relief based on the defendants' failure to pay for certain perishable agricultural commodities – specifically, fruits and vegetables – sold and delivered to Marine Park between July 24, 2004, and October 4, 2004. Docket Entry ("DE") 1 (Complaint). Over four months later, on February 20, 2006, absent any response to the Complaint, Watermelon filed a motion for default judgment. DE 7. On June 19, 2006, the Clerk noted the defendants' default. DE 11. That same day, the Honorable Frederic Block, United States District Judge, entered judgment against the defendants and referred the matter to me for a report and recommendation on damages and costs. DE 12; *see also* DE 13. I now make my report and, for the reasons set forth below, respectfully recommend that the court grant Watermelon a total award in the amount of $51,121.05, comprised of $50,871.05 in unpaid invoices and its filing fee of $250; I further recommend that Watermelon be denied its application for interest, attorney's fees, and a small portion of its claimed costs.

I.  Background

The following facts are drawn from Watermelon's Complaint and the documents submitted in support of its motion for default judgment. Corporate defendant Marine Park is a business located in Brooklyn, New York, that also operates under the names Kings Meat and Kings Park Farmer's Market. Complaint ¶ 5. Individual defendant Rafaniello is Marine Park's principal: in addition to serving as an officer and director of the company, he is also a "dealer" and a "commission merchant." Complaint ¶ 6. Each of the latter terms has a specific defined meaning under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. Ch. 20A ("PACA"). *See* 7 U.S.C. § 499a(b)(5)-(6).

From July 24, 2004, to October 4, 2004, Watermelon entered into a series of contracts with Marine Park for the sale of certain produce. Complaint ¶ 8. In each instance, the sale was documented in an invoice prepared by Watermelon and addressed to Marine Park. Complaint, Ex. A.[1] The defendants received the produce sold by Watermelon without objection and resold it in their ordinary course of business, but they never paid for it. Complaint ¶¶ 8, 9. Watermelon claims that the defendants thereby committed both a breach of contract and a violation of PACA. Complaint ¶¶ 19, 33.

Watermelon served the Complaint on both defendants on October 11, 2005. DE 4; DE 5. Neither defendant ever responded. On February 20, 2006, Watermelon moved for default judgment. DE 7. On June 19, 2006, the Clerk entered a notation of default. DE 11. Judge

---

[1] Watermelon's Complaint refers to certain invoices and states that copies of those invoices "are annexed hereto as Exhibit 'A'." Complaint ¶ 8. Although certain invoices (along with a summary of them) are indeed attached to the Complaint, they are not labeled as an exhibit. From context, however, it is clear that the Complaint uses the term "Exhibit A" to refer to that collection of invoices, and I do likewise here.

Block granted the default judgment that same day and referred the matter to me for a damages inquest. DE 12; DE 13.

In its default motion, Watermelon requested a total award of $54,121.05: specifically, Watermelon asked for $50,871.05 in unsatisfied payments for its produce; reimbursement of its $250 filing fee; and $3,000 as reimbursement of its "estimated" attorney's fees. DE 7-2 (Certification of [Watermelon's counsel] Karel S. Karpe in Support of Judgment by Default as to All Defendants ("Karpe Dec.")) ¶ 18. Upon receiving the referral from Judge Block, I directed Watermelon to submit any materials supporting its request for damages, including evidence or a legal memorandum, by March 14, 2007. Electronic Order dated March 6, 2007. One day *after* that deadline, Watermelon submitted a letter detailing its claim for attorney's fees and asking for a revised total award of $56,824.87, plus pre-judgment interest. DE 15. The revised proposed award is made up of $50,871.05 in unsatisfied payments, $278.82 in expenses, and $5,675.00 in attorney's fees. *Id*. at 4.

II.  Discussion

    A.  Applicable Law

        1.  Default

Entry of a default judgment constitutes admission of all well-pleaded allegations, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(d). The court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)). Detailed affidavits and

3

other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155.

Watermelon has submitted the following evidence: (1) a declaration from its attorney; (2) a summary statement prepared by Watermelon detailing Marine Park's past due bills from the period between July 24, 2004 through October 4, 2004; (3) copies of eight invoices for produce sold by Watermelon to Marine Park between July 24, 2004 and October 4, 2004; (4) a letter from Watermelon's counsel, submitted on March 15, 2007, detailing counsel's request for litigation costs and attorney's fees. Upon this record, I find no need for an evidentiary hearing. *See Transatlantic Marine Claims Agency*, 109 F.3d at 111; *Action S.A.*, 951 F.2d at 508.

### 2. PACA

Congress enacted PACA to regulate the sale of produce in interstate commerce. *"R" Best Produce v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006). PACA was intended to foster fair trade in the produce industry by creating a mechanism for imposing damages on any buyer or seller that failed to satisfy its contractual obligations. *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 36 (2d Cir. 2004) (citing H.R. Rep. No. 98-543, at *3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406). Thus, the statute provides that a buyer must "promptly" make "full payment" for any produce received through a transaction with a seller, 7 U.S.C. § 499b(4), and that failure to do so gives rise to a seller's right to seek damages in either administrative or judicial proceedings. *Id.* § 499e(b); *"R" Best Produce*, 467 F.3d at 241.

Congress amended PACA in 1984 to further protect sellers as "slow-pay and no-pay practices" among buyers rose substantially. *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005) (internal citations omitted). It noted that suppliers

4

of perishable goods had to sell quickly, and as a result, sellers often became unsecured creditors to buyers without first checking those buyers' credit histories. *See* H.R. Rep. No. 98-543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406. When a buyer defaulted, a seller rarely recovered monies owed to it after lenders with superior security interests in the buyer's goods and proceeds took their share. *Id*. Congress therefore sought to ameliorate the risk of loss posed by defaulting buyers by requiring buyers "to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers" until full payment has been made. *Am. Banana*, 362 F.3d at 37 (citing 7 U.S.C. § 499e(c)(2)).

To preserve the benefit of the trust, sellers must provide buyers with written notice of their intent to do so. 7 U.S.C. § 499e(c)(3). The notice requirement can be satisfied by a seller's regular invoices or billing statements, if they include the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*Id.* § 499e(c)(4) (emphasis original).

Trust assets are "intended exclusively to benefit produce suppliers," *"R" Best Produce*, 467 F.3d at 242, and PACA trustees – a class that includes not only the corporate buyer with whom a seller enters into a contract, but also any individual "in the position to control" trust assets, such as the buyer's principal – are under a duty to ensure that those assets are sufficient to guarantee prompt and full payment to trust beneficiaries. *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007). PACA trustees must "maintain trust assets in a

5

manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful." *Id.* (citing 7 C.F.R. § 46.46(d)(1)).[2] An unpaid seller may file suit against PACA trustees "to enforce payment from a trust," 7 U.S.C. § 499e(c)(5), and where an individual in a controlling position fails to preserve trust assets, he or she "may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc.*, 485 F.3d at 705; *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 349 (S.D.N.Y. 1993) ("any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets").

    B.    <u>Liability</u>

As a threshold issue, I note that the court has already determined that Watermelon "has stated a valid claim under PACA and that the condition precedent to suit to enforce payment from a statutory trust has been met." DE 12 at 3. The uncontroverted allegations of the Complaint suffice to establish that each defendant was a dealer and commission merchant licensed under the trust provisions of PACA and that Marine Park failed to make payments for eight consecutive sales of produce between July 24, 2004 and October 4, 2004. Complaint ¶¶ 5-6, 8 & Ex. A. That record suffices to establish the liability not only of Marine Park for a violation of PACA, but also that of Rafaniello. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (unlike piercing the corporate veil, the imposition of personal liability under PACA is not a "rare exception"); *see also Coosemans Specialties, Inc.*, 485 F.3d at 707 (imposing

---

[2] "Dissipation" is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers ... to recover money owed in connection with produce transactions." *Id.* (citing 7 C.F.R. § 46.46(a)(2)).

6

individual liability); *Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F. Supp. 2d 131, 145 (E.D.N.Y. 2003) (noting that several courts in this jurisdiction "have held that in PACA cases, individuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties" and citing as examples *Bronia v. Ho*, 873 F. Supp 854, 861 (S.D.N.Y. 1995); *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651, 655 (S.D.N.Y. 1993); *Morris Okun, Inc.*, 814 F. Supp. at 348)).

C. Damages

1. Unpaid Invoices

Having established the defendants' liability, Watermelon must still establish the amount owed with "reasonable certainty." In that regard, Watermelon relies on a billing summary prepared for Marine Park showing eight past due bills between July 24, 2004 and October 4, 2004, as well as individual invoices for each of those eight transactions. Complaint, Ex. A. The separate invoices are dated between July 24, 2004 and October 4, 2004, and each reflects the sale of a certain quantity of produce to Marine Park. *Id.* Watermelon correctly calculates the amount owed as the sum of the individual invoices: $50,871.05. I respectfully recommend that the court award Watermelon that amount with respect to the unpaid invoices.

2. Interest

PACA does not itself create a right to pre-judgment interest. *Top Banana, L.L.C. v. Dom's Wholesale & Retail Center, Inc.*, 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005). It is within the court's discretion to award pre-judgment interest on a PACA claim, and courts in this jurisdiction have done so based on congressional intent to protect agricultural suppliers. *See Frankie Boy Produce Corp. v. Sun Pacific Enterprises*, 2000 WL 1532914, at *3 (S.D.N.Y. Oct

7

17, 2000); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 595 (S.D.N.Y. 1995); *Morris Okun, Inc.*, 814 F. Supp. at 351. However, I respectfully recommend that the court exercise its discretion not to award such interest in this case. Watermelon has never provided any information as to the authority for such an award, the reason why such an award is warranted as a matter of discretion, nor even any clue as to the interest rate or relevant dates that might be used in calculating the amount of interest to be awarded. The entirety of its submissions on the subject are the following. First, in its motion for a default judgment, it ignored the matter entirely except for a passing reference in its attorney's declaration, which noted that Watermelon "seeks ... interest," Karpe Dec. ¶ 9, *but see id*. ¶¶ 16, 18 (omitting any reference to interest in lists of requested forms of relief), and similar passing references in its notice of motion, and its proposed default judgment order. *See* DE 7 (notice of motion, asking for "interest"), DE 7-3 (proposed judgment including an award of "interest at the legal rate in effect on the date of this judgment"). Second, in its belated submission of March 15, 2007, Watermelon addressed the subject only in the very last word of counsel's letter. *See* DE 15 (seeking a total award of $56,824.87, "plus interest at the judicial rate"). If Watermelon cannot be troubled to explain why it should be awarded interest or even how much it wants, the court should not do so for it.

       3.     <u>Attorney's Fees</u>

As with pre-judgment interest, PACA does not create a right to attorney's fees. *Top Banana*, 2005 WL 1149774, at *2. They may be awarded as "sums owing in connection with" a transaction in produce under PACA, *Coosemans Specialties, Inc.*, 485 F.3d at 708 (citing 7 U.S.C. § 499e(c)(2)), but only when a contract between the parties includes such terms; they are not recoverable absent an independent basis for the award. *Top Banana*, 2005 WL 1149774, at

8

*2 (citing *E. Armata, Inc.*, 887 F. Supp. at 594 ("Attorneys fees are not available under the PACA statute where a contractual basis for the fees is lacking."); *Morris Okun, Inc.*, 814 F. Supp. at 351 (denying attorney's fees to second plaintiff whose contract did not include relevant terms)).

Watermelon claims that it is entitled to an award of attorney's fees pursuant to section 499g(c) of PACA. Karpe Dec. ¶ 17. It is not. Section 499g(c) applies to a complaint previously subject to administrative review, where the Secretary of Agriculture has entered a reparation order against the party that violated the statute. *See* 7 U.S.C. 499(g)(c). Under those circumstances, the party against whom the reparation order is entered may appeal the Secretary's ruling to the appropriate United States District Court. *Id.* To perfect its appeal, the appellant must file a notice with the court's Clerk – including a copy of the administrative proceedings and a statement of the grounds for overturning the Secretary's decision – and within 30 days of entry of the reparation order post a bond with the court in double the amount of the reparation award. *Id.* If the appellant satisfies those requirements, the court will try the case *de novo*. *Id.* Even then, attorney's fees are only available to the *appellee*, and only if the Secretary's original decision is upheld. *Id.* Watermelon has provided no evidence whatsoever that it pursued administrative remedies prior to initiating the instant action, or, if it had, that Watermelon satisfied any of the statutory conditions precedent to appeal. The court therefore has no basis upon which to award attorney's fees under PACA.

Watermelon's contractual claim for attorney's fees fails for a more basic reason: it is not supported by any facts. Nothing in the record demonstrates that the parties entered into any agreement on this issue. Watermelon's counsel asserts that Watermelon is entitled to recover its attorney's fees "under the terms of the invoices" it sent to Marine Park. Karpe Dec. ¶ 17. That

9

assertion is demonstrably false. The invoices to which counsel refers are attached to the Complaint and incorporated therein by reference. Each such invoices includes only the following information: Watermelon's name and contact information, the name and address of the buyer,; the date of the transaction; the description and unit price of each item of produce sold; the total price for each item; the grand total of all invoiced items; and the following pre-printed warning:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. ¶ 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

Complaint ¶ 11 & Ex. A. There is no mention anywhere of the issue of attorney's fees. The record is clear that the invoices contain no fee-shifting provision, and the applicable law is equally clear that in the absence of such a term Watermelon may not recover its fees. I therefore respectfully recommend that the court reject this prong of the Watermelon request for relief.

    4.   Other Costs

In its initial motion, Watermelon sought reimbursement of its $250 filing fee. The record reflects that it did incur such a cost, DE 1, and I therefore recommend that it be included in the award. In its belated submission on March 15, 2007, Watermelon's counsel also listed, without explanation or documentation, two other costs: "Travel Expense: [$]3.00" and "Messenger/ Delivery: [$]27.82[.]" DE 15 at 4. Absent further explication, I have no way of assessing whether the cited travel and delivery costs – assuming they were actually incurred, as I do – were associated with filing the case or with other aspects of the representation. I therefore lack a

sufficient record to recommend that they be reimbursed. Accordingly, I respectfully recommend that the court limit its award of costs to the $250 filing fee.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding Watermelon judgment in the amount of $51,121.05, comprised of $50,871.05 in unpaid invoices and its filing fee of $250; and denying its application for interest and attorney's fees.

IV.     Objections

I direct plaintiff Watermelon to serve a copy of this Report and Recommendation on defendants Marine Park and Mr. Rafaniello by certified mail, and to file proof of service with the court no later than September 21, 2007. Any objection to this Report and Recommendation must be filed no later than September 28, 2007. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
          September 14, 2007

                                                                          /s/ James Orenstein
                                                                          JAMES ORENSTEIN
                                                                          U.S. Magistrate Judge